UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

            Plaintiff,

       v.                                Case No. 05-CR-020

RENE HERRERA-LOPEZ,

            Defendant.

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

---

      The power to dismiss an indictment derives from two sources: constitutional error and the federal court's inherent supervisory power. *United States v. Red Elk*, 955 F.Supp. 1170, 1174 (D.S.D. 1997), citing *United States v. Isgro*, 974 F.2d 191, 1094-99 (9th Cir. 1992), cert. denied, 507 U.S. 985 (1993); *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir.), cert. denied, 477 U.S. 908 (1986). In order to dismiss an indictment based on constitutionally offensive prosecutorial misconduct, "such as misleading or misinforming the grand jury," the court must either find that the "defendant suffers prejudice as a result of the Government's actions", *United States v. Piedrahita*, 791 F. Supp. 418, 420 (S.D.N.Y. 1992), citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 258, 108 S.Ct. 2369, 2373 (1988); *United States v. Brio*, 907 F.2d 392, 394 (2d Cir. 1990), or "a history of prosecutorial misconduct that is so systematic and pervasive and that it affects the fundamental fairness of the proceeding or if the independence grand jury is substantially infringed." *Red Elk*, 955 F.Supp. at 1174; *Isgro*, 974 F.2d at 1094. Prejudice may be presumed from constitutional error "where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair. . ." *Bank of Nova Scotia*, 487 U.S. at 257, 108 S.Ct. at 2374-75, citing *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 3105-06 (1986). Stated another way, a defendant is prejudiced when "it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such indictments." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. at 2374. When determining whether constitutional error is present, the focus of the inquiry is "on the impact of the alleged misconduct on the grand jury's impartiality, not on prosecutorial culpability." *Red Elk*, 995 F.Supp. at 1174, citing *United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1392 (9th Cir. 1983), cert. denied, 465 U.S. 1079 (1984);

      That focus changes somewhat, however, when the issue is whether the court should exercise its own supervisory power to remedy grand jury abuse. Prejudice to the defendant is no longer the question; rather, the exercise of supervisory power is designed to deter prosecutorial

misconduct in the future. As the United States Court of Appeals for the First Circuit stated in *United States v. Flores-Rivera*, 56 F.3d 319, 328 n.7 (1st Cir. 1995):

> We repeat our prior admonishment against government misconduct, this time in the context of prosecutorial misconduct before the grand jury:
> Before departing from these shores, we pause to add a qualification: the use of supervisory power to dismiss an indictment, in the absence of injury to the defendant, may not be entirely a dead letter. The [Supreme] Court's reasoning in *United States v. Hastings* may be read to leave open the possibility that the goal of deterring future misconduct would justify the use of supervisory power to redress conduct not injuring defendants if the conduct is plainly improper, indisputably outrageous, and not redressable through the utilization of less drastic disciplinary tools.
>
> *United States v. Santana*, 6 F.3d 11 (1st Cir. 1993) (citing *United States v. Hasting*, 461 U.S. 499, 506, 103 S.Ct. 1974, 1979, 76 L.Ed. 2d 96 (1983).

Thus, the egregiousness of prosecutorial culpability, rather than the impact on the grand jury's integrity, is the key for analyzing a case for dismissal by the exercise of a court's supervisory power. Admittedly, the use of such power is limited. See Santana, 6 F.3d at 10 (supervisory power is a "potent elixir that should not be casually dispensed"); *Red Elk*, 955 F.Supp. at 1175 (the power "must be used sparingly"). "Sparingly," however, does not mean "never." As one District Judge wisely noted:

> It is necessary for the trial judge, when convinced of a grave interference with the independent functioning of the grand jury, to exercise its supervisory role if the court's traditional charge empaneling the grand jury, see I Bench Book for United States District Court Judges (3d Ed.). 3.02-5, is more than a mouthful of platitudes and the Fifth Amendment's guarantee of indictment by grand jury is to have any modern meaning.

*Breslin*, 916 F.Supp. at 446-47.

Thus, [*Bank of Nova Scotia]* makes clear that the supervisory power can be used to dismiss an indictment because of misconduct before a grand jury, at least where that misconduct amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by the Court and by Congress to insure the integrity of the grand jury's functions," [*Mechanik*, 475 U.S. at 74, 106 S.Ct. at 943].

The *Williams* decision references those "standards of behavior for prosecutors (and others)," violations of which may warrant the exercise of the court's supervisory power. To the extent relevant to the case at bar, those standards include 18 U.S.C.A. §1623 (criminalizing false declarations before a grand jury). 504 U.S. at 46 n. 6, 112 S.Ct. at 1741 n.6. It is important to emphasize that nothing in *Williams* limits the court's power to dismiss an indictment as a result

2

of constitutional violations. Indeed, what more important "rules" exist than those imposed by the United States Constitution, such as a defendant's rights under the Due Process Clause of the Fifth and Fourteenth Amendments, see *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987); *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979); *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974), and the Grand Jury Clause of the Fifth Amendment. See *Red Elk*, 955 F. Supp. At 1182 n. 12. Moreover, one need not look to the Constitution to find the "rule" because F.R.Crim.P. 7(a) embodies the Grand Jury Clause of the Fifth Amendment. See Advisory Committee Notes (1944 Adoption) to Rule 7(a).

In *Williams*, the Court expressly held that the government is under no obligation to present exculpatory evidence to the grand jury. 504 U.S. at 50, 112 S.Ct. at 1743-44. "However, the government's creation or acceptance of an erroneous impression that related to such evidence could support a defendant's argument that a supposed mistake was intentional misconduct." *United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995). Notwithstanding *Williams*, "a prosecutor may not deliberately mislead a grand jury or instill false impressions to it in an effort to obtain an indictment." *Red Elk*, 955 F.Supp. at 1182, citing *DeRosa*, 783 F.2d at 1404-07. "Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role." 607 F.2d at 882; see also *Hogan*, 712 F.2d at 762.

In the case at bar, upon information and belief, the only witness at the Grand Jury proceeding was Willie Brantley. According to the Government, the agent simply read the allegations from the criminal complaint to the Grand Jury to secure an indictment. That testimony was false in the following respects:

Agent Brantley indicated that the CI and the Defendant had several meetings and that all of these meetings were monitored, surveillled and videotaped by DCI agents and specifically that a controlled delivery of $2,400.00 in cash was made to the defendant on December 7, 2004. There is no recording of an alleged meeting of December 7, 2004. There is no body wire recording and there is no audio recording. There is also no videotape recording of a December 7, 2004 meeting.

Agent Brantley indicated that on December 10, 2004 two telephone calls between the CI and the Defendant were recorded by agents. Agent Brantley further indicated that the CI and the Defendant met on December 10, 2004. There is no videotape recording of a December 10, 2004 meeting. There is no body wire recording for December 10, 2004. There are no recorded telephone calls for December 10, 2004.

Agent Brantley lastly alleged that the CI wore a body wire on December 14, 2004. There is no such recording.

In addition, we would ask the Court to rely on our previously filed affidavit in this case. In this case, the grand jurors were not presented with sufficient evidence to find probable cause for arrest and the integrity of the grand jury proceedings has been impaired. Based on the foregoing arguments and authorities, this Court is respectfully urged to recommend a dismissal

3

of the indictment in this case. Because false testimony was presented to a grand jury, it is respectfully urged that this court, at a minimum, conduct an evidentiary hearing on the merits of this motion.

                              Respectfully Submitted,

                              KUCHLER LAW OFFICES


                              By: _____
                                    DONNA J. KUCHLER
                                    State Bar No. 1023587

<u>P.O. ADDRESS:</u>
1535 E. Racine Avenue
P.O. Box 527
Waukesha, WI  53187-0527
(262) 542-4218